UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

ROBERT M. CAMPBELL,                     )
                                        )
            Plaintiff,                  )
                                        )
v.                                      )        No.:   3:15-CV-551-TAV-CCS
                                        )
NANCY A. BERRYHILL,[1]                  )
Acting Commissioner of Social Security, )
                                        )
            Defendant.                  )

## MEMORANDUM OPINION

This civil matter is before the Court on plaintiff's Motion for Judgment on the

Pleadings [Doc. 14] and defendant Nancy A. Berryhill's, Acting Commissioner of Social

Security ("the Commissioner") Motion for Summary Judgment [Doc. 16]. Plaintiff filed

a response in opposition to the Commissioner's motion [Doc. 18]. Plaintiff seeks judicial

review of the Administrative Law Judge's ("the ALJ") decision—which constitutes the

final decision of the Commissioner. For the reasons that follow, the Court will grant in

part and deny in part plaintiff's motion, and will deny the Commissioner's motion.

## I.    Procedural History

On November 7, 2008, plaintiff filed an application for disability insurance

benefits ("DIB") and supplemental security income ("SSI"), claiming a period of

disability beginning January 1, 2008 [Tr. 80, 340–52]. After his application was initially

---

[1] During the pendency of this case, Nancy A. Berryhill replaced Acting Commissioner
Carolyn W. Colvin. Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is
substituted as defendant in this case.

denied, plaintiff requested a hearing for reconsideration. [Tr. 218]. On May 11, 2010, the ALJ held a hearing to review the determination of plaintiff's claim [Tr. 46–75]. On May 28, 2010, the ALJ found that plaintiff was not disabled [Tr. 149–65]. The Appeals Council granted plaintiff's request for review, and on July 7, 2011, the Council remanded the case for a new hearing [Tr. 166]. On March 19, 2012, the ALJ held a second hearing [Tr. 76–119]. The ALJ again issued an unfavorable decision on April 24, 2012 [Tr. 171–93]. Plaintiff again requested a review and the Appeals Council again granted the request, remanding the case for further review [Tr. 194]. On May 16, 2014, a third hearing was held before a different ALJ [Tr. 120–44]. The new ALJ rendered an unfavorable decision on June 16, 2014 [Tr. 20–45], and the Appeals Council declined review [Tr. 1–6]. Thus, the third ALJ decision became the Commissioner's final decision.

Having exhausted his administrative remedies, plaintiff filed a complaint with this Court on December 11, 2015, seeking judicial review of the Commissioner's final decision under § 405(g) of the Social Security Act [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II.   The ALJ's Findings

The ALJ made the following findings:

1.   The claimant meets the insured status requirements of the Social Security Act through December 31, 2012.

2.   The claimant has not engaged in substantial gainful activity since January 1, 2008, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).

2

3. The claimant has the following severe impairments: scoliosis and small posterior osteophytes of the thoracic spine; kyphotic deformity at the level of C5-6 and midline disk bulge or disk protrusion with intervertebral neural foramina narrowing and spinal stenosis at the level of C5-6 and C6; degenerative disc disease of the lumbar spine with disc herniations and mild central canal stenosis; degenerative joint disease; tendinosis of the right rotator cuff tendon; peripheral neuropathy; reversal of the cervical curve and disc bulges degenerative disc disease of the lumbar spine with disc protrusion; a respiratory disorder; Anxiety Disorder NOS, moderate; Affective Disorder NOS; Depressive Disorder NOS, mild to moderate; ADHD (Attention Deficit Hyperactivity Disorder); and Bipolar Disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that he is limited to occasional climbing or ramps and stairs; occasional balancing, stooping kneeling, crouching, and crawling; no more than occasional overhead reaching with the right arm; no concentrated exposure to pulmonary irritants or hazards; and no climbing ladders, ropes, or scaffolds. The claimant is able to perform and maintain concentration for simple, routine, repetitive tasks and perform work that requires no more than occasional interaction with the public.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on April 29, 1975 and was 32 years old, which is defined as a younger individual age 18–44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

3

9. Transferability of job skills is not material to the determination of disability because using Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 44.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2008, through the date of this decision (20 CFR 404.1520(g), and 416.920(g)) [Tr. 25–37].

## III.    Standard of Review

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. 42 U.S.C. § 405(g); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981)) (internal citations omitted).

4

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citing *Halsey v. Richardson*, 441 F.2d 1230 (6th Cir. 1971)).

5

## IV.    Analysis

Plaintiff asserts that the ALJ committed three errors in determining plaintiff's claim.   First, plaintiff argues that the ALJ failed to properly evaluate a "Physical Capacities Evaluation" ("physical assessment") from plaintiff's treating medical providers, Dr. Neil Barry and Ms. Jami England, ARNP [Doc. 8 pp. 6–10].   Second, plaintiff contends that the ALJ erred in assessing Dr. Robert Blaine's 2009 and 2011 opinions [*Id.* at 10–16].   Lastly, plaintiff contends that the ALJ unfairly focused on the lack of additional medical treatment plaintiff received in evaluating plaintiff's credibility and subjective allegations of pain [*Id.* at 16–21].   The Court will address each of these alleged errors in turn.

### A.    Dr. Barry and Ms. England's Opinions

Plaintiff contends that the ALJ's decision should be vacated and remanded because the ALJ failed to properly evaluate Dr. Barry and Ms. England's physical assessment of plaintiff [Doc. 8 pp. 6–10].   Plaintiff has been a patient of Dr. Barry's office since at least 2004, receiving care from both Dr. Barry and Ms. England.

The implementing regulations of the Social Security Act contain procedures the ALJ must follow in determining the appropriate weight given to medical opinions.  *See* 20 C.F.R. §§ 404.1527, 416.927.  A "[m]edical opinion" is a statement from a physician, psychologist, or other acceptable medical source, that "reflect[s] judgments about the nature and severity of [a claimant's] impairment(s)," including symptoms, diagnosis, prognosis, and physical or mental restrictions.  *Id.* §§ 404.1527(a)(2), 416.927(a)(2).

6

A treating physician's medical opinion as to the nature and severity of an impairment must be given "controlling weight" so long as the opinion is: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques[,] and" (2) "is not inconsistent with the other substantial evidence in [the] case record." *Id.* §§ 404.1527(c)(2), 416.927(c)(2). When an ALJ does not give such opinions controlling weight, the ALJ should consider the following factors in determining what weight to give a treating physician's opinion: (1) the length of treatment, (2) the frequency of examination, (3) the nature and extent of the treatment relationship, (4) supportability— the amount of relevant evidence supporting the opinion, (5) the opinion's consistency with the record as a whole, (6) the specialization of the source, and (7) other factors which tend to support or contradict the opinion. *Id.*

Furthermore, the AJL must give "good reasons in [the] notice of determination or decision" for the weight accorded to a treating source's opinion. *Id.* A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for the weight." SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996).

Where an ALJ fails to properly weigh a treating physician's opinion, the Sixth Circuit has provided that courts should not hesitate to remand the case. *See Wilson*, 378 F.3d at 545. A remand, however, is not necessary if ALJ's failure to give "good reason"

for the weight determination is harmless. *Cole v. Astrue*, 661 F.3d 931, 940 (6th Cir. 2011).

The record contains the following three statements pertaining to plaintiff's medical conditions that both Dr. Barry and Ms. England signed: (1) an October 28, 2009, letter, (2) a May 3, 2010, physical assessment, and (3) a May 3, 2010, mental assessment. Plaintiff specifically attributes error to the ALJ's consideration of Dr. Barry and Ms. England's physical assessment. Although plaintiff does not assign error to the ALJ's consideration of the letter and the mental assessment, the Court finds that these issues also warrant review. The Court will first address the physical assessment and will then turn to the letter and the mental assessment.

### 1.    Physical Assessment

On May 3, 2010, Dr. Barry and Ms. England completed a physical assessment pertaining to plaintiff's functional abilities to perform work-related activities [Tr. 807]. Therein, Dr. Barry and Ms. England opined that during an eight-hour workday, plaintiff could sit for one hour or less, stand for less than thirty minutes, and walk for one hour [*Id.*]. The assessment also provided that plaintiff would need to take rests with each activity [*Id.*]. In addition, the assessment stated that plaintiff could occasionally lift and carry up to ten pounds, but that he could not use his hands for repetitive actions such as grasping, pushing, pulling, or fine manipulation, nor could he use his feet for repetitive movements such as pushing or pulling of leg controls [*Id.*]. Moreover, the assessment provided that plaintiff could occasionally bend and reach, but never squat, crawl, or

8

climb, that he had moderate limitations with driving automotive equipment, and that he was incapable of performing activities involving unprotected heights, moving machinery, exposure to dust, fumes, and gases, as well as marked changes in temperature and humidity [*Id.*].

In the disability determination, the ALJ observed that Dr. Barry was plaintiff's primary care physician and had treated plaintiff for years due to plaintiff's complaints of numbness in his right hand, as well as pain in his neck, back, right shoulder, and chest [Tr. 29]. The ALJ noted examination findings including normal cardiac findings, tenderness of the right arm, curvature of the back to the right side, and limited range of motion of the right arm and shoulder [Tr. 29, 34.]. The ALJ summarized the findings contained in the physical assessment [Tr. 29, 34–35]. The ALJ ultimately concluded that the physical assessment "is overly restrictive because it is clearly not supported by [Dr. Barry and Ms. England's] own clinical findings, imaging studies, and the total case record" [Tr. 34]. Consequently, the ALJ assigned the physical assessment "minimal evidentiary weight" [*Id.*].

Plaintiff asserts that the ALJ committed error in its consideration of the physical assessment because the ALJ: (1) failed to discuss the balancing factors set forth in 20 C.F.R. §§ 404.1527(c) and 416.927(c) in assessing the weight accorded to the physical assessment; and (2) did not provide good reason for assigning minimal weight.

As an initial matter, the Court finds that the physical assessment constitutes a medical opinion that the ALJ should have weighed. *See* 20 C.F.R. §§ 404.1527(a)(2),

416.927(a)(2) (defining "[m]edical opinion" as a statement from a physician, psychologist, or other acceptable medical source, that "reflect[s] judgments about the nature and severity of [a claimant's] impairment(s)," including symptoms, diagnosis, prognosis, and physical or mental restrictions). The Court, therefore, turns to plaintiff's arguments in support of her contention that the ALJ's weighing of the physical assessment was inadequate.

First, plaintiff argues that in declining to give the physical assessment controlling weight, the ALJ was required, but failed, to apply the balancing factors set forth in 20 C.F.R. §§ 404.1527(c)(1)–(6) and 416.927(c)(1)–(6). To the extent plaintiff is arguing that the ALJ must discuss every regulatory factor in the decision, the Court disagrees. Sections 404.1527(c)(1)–(6) and 416.927(c)(1)–(6) do not mandate that the ALJ explicitly discuss every factor listed. *See McClain-Nelson v. Comm'r of Soc. Sec.*, No. 12-14490, 2014 WL 988910, at *7 (E.D. Mich. Mar. 13, 2014) ("[A]n ALJ is not required to discuss every factor listed in 20 C.F.R. § 404.1527[(c)]."); *see also Buchert v. Comm'r of Soc. Sec.*, No. 3:13-CV-01418, 2014 WL 1304993, at *7 (N.D. Ohio Mar. 27, 2014). As such, the Court does not find that the ALJ's failure to discuss each factor listed in §§ 404.1527(c)(1)–(6) and 416.927(c)(1)–(6) mandates remanding this case.

Plaintiff also contends, however, that the ALJ did not give good reason for discounting the physical assessment [Doc. 15 p. 9]. He asserts that the ALJ's rationale for the decision consisted of a conclusory statement that the physical assessment is unsupported by the record [*Id.*]. In support of his argument, plaintiff cites to the findings

in Dr. Barry and Ms. England's letter as evidence that plaintiff's diagnoses, particularly his scoliosis, degenerative disc disease, disc herniations, and canal stenosis of the cervical and lumbar spines, support and explain the debilitating effects of plaintiff's impairments [*Id.*].

In response to this argument, the Commissioner asserts that the ALJ considered the regulatory factors, including the examining and treating relationship, when the ALJ observed that Dr. Barry was plaintiff's treating physician [Doc. 17 p. 10]. In addition, the Commissioner argues that the ALJ found that the physical assessment was not supported by or consistent with the objective evidence [*Id.* at 10].

Upon review, the Court is unable to conclude that substantial evidence supports the ALJ's finding. *See Blakley*, 581 F.3d at 405 (providing that in reviewing the ALJ's decision, courts should determine "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence"). The ALJ provides no analysis or discussion beyond his finding that the physical assessment "is clearly not supported by [Dr. Barry and Ms. England's] own clinical findings, imaging studies, and the total case record" [Tr. 34]. The ALJ does not cite to any of Dr. Barry or Ms. England's examinations or clinical findings that are directly contrary to their opinion expressed in the physical assessment. The ALJ also does not note any absence of expected findings, diagnostic studies, or results. Rather, the ALJ generalizes ten years of treatment with Dr. Barry and Ms. England by stating that treatment notes document tenderness of the right arm, curvature of the back, and limited range of motion [Tr. 29].

11

This general discussion of treatment records is insufficient to support a finding that the physical assessment "is clearly not supported by [Dr. Barry and Ms. England's] own clinical findings" [Tr. 34].

Moreover, upon the Court's review of the record, it is not immediately clear how the imaging studies in the record do not support Dr. Barry and Ms. England's physical assessment. The record contains numerous MRIs of plaintiff's thoracic, cervical, and lumbar spine from 2009, which demonstrate that plaintiff had scoliosis, small posterior osteophytes, mild central canal stenosis at L4-L5, reversal of the cervical curve, disc bulges, degenerative disc disease particularly at L5 and 51, disc herniated at L4-L5 and L5-51, and tendinosis of the right rotator cuff [Tr. 29]. Dr. Barry and Ms. England were aware of these 2009 imaging studies when issuing the relevant physical assessment, and they opined that the studies revealed impairments that were severe enough to account for plaintiff's disabling symptoms [Tr. 806]. Furthermore, additional MRIs from 2011, taken after the physical assessment, revealed kyphotic deformity at the level of C5-6, midline disk bulge or disk protrusion with intervertebral neural foramina narrowing and spinal stenosis at the level of C5-6 and C6-7, and degenerative disk and midline disk protrusion at the level between L4-5 and L5-S1 [Tr. 29–30]. The ALJ does not explain how these MRIs are inconsistent with the physical assessment.

In the determination, the ALJ discussed the testimony of medical expert Dr. Burgin Dossett, who testified during the second administrative hearing in connection with the hearing decision issued on April 23, 2012 [Tr. 30]. Dr. Dossett testified that, in his

opinion, the MRI results of plaintiff's spine would not cause his alleged symptoms [*Id.*].

As the ALJ concluded that the imaging studies did not support the physical assessment, it

appears that the ALJ credited Dr. Dossett's testimony. The ALJ did not, however,

specifically weigh Dr. Dossett's testimony. While the ALJ is free to adopt the opinion of

a non-treating, non-examining physician over the opinion of a treating physician, the ALJ

does not explain why Dr. Dossett's interpretation of the imaging studies is more reliable

than that of Dr. Barry and Ms. England.

The record in this matter consists of over 1,000 pages and contains a myriad of

medical evidence, including numerous imaging studies, treatment from a variety of

medical providers, and various medical opinions. Given the nature and complexity of

this case, the Court cannot reasonably read the ALJ's decision and pinpoint with certainty

and clarity the exact evidence the ALJ relied upon to find that the limitations opined by

Dr. Barry and Ms. England in their physical assessment were overly restrictive. It is the

ALJ's responsibility to make clear to subsequent reviewers the weight assigned to a

treating physician's opinion and the reasons for that weight. *See* SSR 96-2p, 1996 WL

374188, at *5 (July 2, 1996). Conclusory findings that are not sufficiently explained do

not meet the substantial evidence standard. *See Cutlip*, 25 F.3d at 286. As such, the

Court finds that the ALJ did not properly weigh Dr. Barry and Ms. England's physical

assessment in making the determination.

## 2.    Letter and Mental Assessment

The Court now turns to whether the ALJ's weighing of Dr. Barry and Ms. England's letter and mental assessment were adequate.

The October 28, 2009, letter describes plaintiff's impairments and symptoms. These symptoms included severe neck and arm pain, muscle spasms, leg pain, bilateral radiculopathy in the upper and lower extremities, headaches, lower back pain, upper extremity weakness, and numbness in the right hand—all secondary to degenerative disc disease and canal stenosis of the cervical and lumbar spine [Tr. 806]. The letter further provides that plaintiff suffers from scoliosis with reversal of the cervical spine curvature, bulging disc at three levels of the cervical spine, and disk herniation of two levels of the lumbar spine [*Id.*]. In addition, the letter describes how these impairments have affected plaintiff's ability to work and further provides that plaintiff's impairments have worsened despite compliance with multiple treatment plans [*Id.*].

Contemporaneous with the physical assessment that the Court has already discussed, Dr. Barry and Ms. England also completed a second form entitled "Medical Assessment of Ability to Do Work-Related Activities (Mental)" ("mental assessment") that opined on plaintiff's mental limitations [Tr. 808–09]. Therein, Dr. Barry and Ms. England explained that plaintiff has mild attention-deficit/hyperactivity disorder ("ADHD") and has difficulty staying on track, concentrating, making quick decisions, and lacks interpersonal skills [Tr. 809]. In addition, the assessment provided that plaintiff's ability to understand, remember, and carry out complex, detailed, or simple job

14

instructions was poor due to frequently over-analyzing situations and being disorganized [*Id.*]. Finally, the assessment indicated that plaintiff's ability to maintain personal appearance was fair and his ability to behave in an emotionally stable manner, relate predictably in social situations, and demonstrate reliability was poor [*Id.*]. In this regard, Dr. Barry and Ms. England noted that plaintiff's depression and anxiety, as well as insomnia, affected his ability to make personal and social adjustments [*Id.*].

As an initial matter, the Court finds that both the letter and the mental assessment are medical opinions that the ALJ should have weighed. *See* 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2) (defining "[m]edical opinion" as a statement from a physician, psychologist, or other acceptable medical source, that "reflect[s] judgments about the nature and severity of [a claimant's] impairment(s)," including symptoms, diagnosis, prognosis, and physical or mental restrictions). The letter describes specific impairments and related symptoms that Dr. Barry and Ms. England opined were lifelong conditions that were unlikely to improve despite treatment efforts and that impacted plaintiff's ability to work [Tr. 806]. Moreover, the mental assessment provided that plaintiff's ADHD, depression, and anxiety caused specific work-related restrictions [Tr. 808–09]. As the Court has determined that the letter and mental assessment are medical opinions, the Court must consider to whether the ALJ complied with federal regulations governing the determination of weight accorded to such opinions.

15

In the decision, the ALJ summarized the findings made in the October 28, 2009, letter and the mental assessment [Tr. 29, 34–35]. The ALJ did not, however, state what weight, if any, was due to the letter or mental assessment.

Upon review of the ALJ's decision and the record as a whole, the Court finds, *sua sponte*,[2] that the ALJ did not properly weigh the letter or the mental assessment. The ALJ's failure to assign a specific weight to the letter and mental assessment constitutes error. *Cole*, 661 F.3d at 938; *see also Blakley*, 581 F.3d at 408 (holding that "[a] finding that a treating source medical opinion . . . is not entitled to controlling weight [does] not [mean] that the opinion should be rejected"). Moreover, the Court finds the ALJ's failure to provide an explanation for the weight assigned to each opinion is significant. The purpose of the "good reason" rule is to allow claimants to "understand the disposition of

---

[2] While a plaintiff's failure to raise argument on a particular issue is generally waived, the Court may order a remand on issues raised *sua sponte*. *See Berger v. Comm'r of Soc. Sec.*, No. 12-CV-11779, 2013 WL 4437254, at *9 n.3 (E.D. Mich. Aug. 16, 2013) ("Notably, in Social Security cases, the failure to submit a particular legal argument is 'not a prerequisite to the Court's reaching a decision on the merits' or a finding, *sua sponte*, that grounds exist for reversal."); *Buhl v. Comm'r of Soc. Sec.*, No. 12-10087, 2013 WL 878772, at *7 n.5 (E.D. Mich. Feb. 13, 2013) (plaintiff's failure to raise an argument did not prevent the court from identifying error based on its own review of the record and ruling accordingly), *adopted by* 2013 WL 878918 (E.D. Mich. Mar. 8, 2013). Here, the Court raises the ALJ's failure to weigh Dr. Barry's letter and mental assessment *sua sponte* not only because the failure to weigh a treating physician's opinion may deprive plaintiff of a substantial right, but also because of the repetitious nature of the error. The Appeals Council observed in its first remand order that the ALJ did give Dr. Barry's mental assessment a specific weight or provide reason for giving it no weight [Tr. 168], and in both the first and subsequent remand orders, the ALJ was directed to reweigh Dr. Barry's opinions and explain the weight given to them. [Tr. 168, 196]. Therefore, the Court finds that the ALJ's failure to do so in the instant matter is particularly troublesome given the procedural posture of this case.

their cases, particularly where a claimant knows that his physician has deemed him disabled and therefore might be bewildered when told by an administrative bureaucracy that [he] is not." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007) (quoting *Wilson*, 378 F.3d at 544) (internal quotation marks omitted). The ALJ's failure to adhere to this fundamental principle hinders the Court from conducting meaningful appellate review. *See id.* Accordingly, the Court finds that the ALJ erred by not adequately weighing Dr. Barry and Ms. England's letter or mental assessment.

### 3.    Reversible Error

Having found that the ALJ did not properly weigh Dr. Barry and Ms. England's three medical opinions, the Court now turns to whether this failure constitutes reversible error. In doing so, the Court observes that the Sixth Circuit has provided that courts should not hesitate to remand a case when an ALJ fails to properly apply the treating physician rule. *See Wilson*, 378 F.3d at 545. A remand, however, is not necessary if the violation of the "good reason" rule is harmless. *Cole*, 661 F.3d at 940. Error is harmless when:

> (1) a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it; (2) if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion; or (3) where the Commissioner has met the goal of § 1527[(c)](2) . . . even though she has not complied with the terms of the regulation.

*Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010) (citation omitted). The Court finds that none of these exceptions apply here.

17

Consequently, the Court will order that this case be remanded to the ALJ to assign a specific weight to all three medical opinions and, to the extent that the opinions are not assigned controlling weight, the ALJ must provide good reason for the weight given.

### B.    Dr. Robert Blaine's Opinions

Plaintiff also asserts that the ALJ erred in the assessment of consultative examiner Dr. Robert Blaine's 2009 and 2011 opinions [Doc. 8 pp. 10–16].

The Court observes that "opinions from nontreating . . . sources are never assessed for 'controlling weight.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013). In fact, opinions rendered by one-time consultative examiners are not due any special degree of deference. *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). However, these opinions, like all medical opinions, must be considered. 20 C.F.R. §§ 404.1527(c), 416.927(c). "The Commissioner instead weighs these opinions based on the examining relationship (or lack thereof), specialization, consistency, and supportability, but only if a treating-source opinion is not deemed controlling." *Gayheart*, 710 F.3d at 376 (citing 20 C.F.R. § 404.1527(c)). "Other factors 'which tend to support or contradict the opinion' may be considered in assessing any type of medical opinion." *Id.* (quoting 20 C.F.R. § 404.1527(c)(6)).

Plaintiff asserts that the ALJ committed error in assessing Dr. Blaine's opinions from 2009 and from 2011. The Court will consider the ALJ's assessments of Dr. Blaine's 2009 and 2011 opinions in turn.

18

### 1.    2009 Opinion

Dr. Blaine performed the first of two consultative examinations on January 5, 2009 [Tr. 631–33].  He concluded that in an eight-hour workday, plaintiff could lift and carry ten pounds frequently and twenty-five pounds occasionally, could stand or walk for three to four hours with reasonable rest breaks, and could sit for eight hours with frequent rests breaks and changes of position [Tr. 633].  The ALJ found Dr. Blaine's 2009 opinion was supported by Dr. Blaine's own findings and generally supported plaintiff's residual functional capacity ("RFC") [Tr. 34].  The opinion was assigned "great evidentiary weight" [*Id.*].

According to plaintiff, the ALJ gave the 2009 opinion great weight but excluded from plaintiff's RFC, without explanation, Dr. Blaine's recommendation that plaintiff would need to frequently alternate positions and take breaks [Doc. 15 pp. 10–14].  Citing Social Security Ruling 96-9p and *Bookout v. Commissioner of Social Security.*, No. 3:13-CV-463, 2014 WL 4450346, at *7 (E.D. Tenn. Sept. 10, 2014), plaintiff submits that the omission is significant because an inability to sit for most of the workday or the need to change positons throughout the workday significantly erodes the work base for sedentary work [*Id.* at 12–14].  The Commissioner argues that the ALJ could not have accepted such an ambiguous limitation because Dr. Blaine did not qualify how frequent breaks would be required [Doc. 17 p. 9].  Plaintiff responds that the Commissioner's position ignores the ALJ's obligation to explain why certain portions of a medical opinion are adopted while other portions are excluded [Doc. 18 p. 3].

19

Social Security Ruling 96-5p explains that a "medical source statements may actually comprise separate medical opinions regarding diverse physical and mental functions, such as walking, lifting, seeing, and remembering instructions, and that it may be necessary to decide whether to adopt or not adopt each one." SSR 96-5p, 1996 WL 374183, at *4 (July 2, 1996). As observed in *Bookout*, when the ALJ purports to defer to a medical opinion that includes a need to change positions frequently, but excludes the limitation from the RFC, "the omission is significant because the need to alternate between sitting and standing affects the number of jobs a claimant is capable of performing." *Bookout*, 2014 WL 4450346, at *7. Indeed, the Sixth Circuit has explained that "[t]he need for a sit/stand option generally requires the testimony of a vocational expert because it precludes a wide range of work at any given exertional level." *Hagins v. Comm'r of Soc. Sec.*, 62 F. App'x. 84, 85 (6th Cir. 2003). Moreover, Social Security Ruling 96-9p states that unless the need to alternate between sitting and standing can be accommodated by scheduled breaks and lunch period, the occupational base for a full range of unskilled sedentary work will be eroded. SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996).

Accordingly, the Court finds that the ALJ should have explained why the need for frequent breaks or the need to alternate between positions was not included in the RFC. It is unclear to the Court whether the exclusion of the work-related limitations was a calculated omission or an oversight by the ALJ. Without any meaningful explanation by the ALJ, the Court declines to assume, as urged by the Commissioner, that the limitations

were too vague. As such, the Court finds that the ALJ's treatment of Dr. Blaine's 2009 opinion was in error.

## 2. 2011 Opinion

Dr. Blaine performed a second consultative examination on September 6, 2011, in which Dr. Blaine again opined on plaintiff's physical abilities during an eight-hour workday [Tr. 831–39]. Specifically, Dr. Blaine concluded that plaintiff could: (1) lift and carry up to twenty pounds frequently and up to fifty pounds occasionally; (2) sit for eight hours total and up to one hour without interruption; (3) stand for four hours; (4) walk for three hours total and up to one to five minutes without interruption; (5) occasionally use his hands for reaching, handling, fingering, feeling, and pushing or pulling; (6) occasionally operate foot controls; (7) occasionally perform postural activities; (8) frequently tolerate exposure to unprotected heights and moving mechanical parts; and (9) could occasionally operate a motor vehicle [Tr. 834–38].

With regard to the 2011 opinion, the ALJ found that the opinion, in part, was supported by Dr. Blaine's objective findings, but that certain aspects of the opinion were an "overestimate" of plaintiff's limitations [Tr. 34]. The ALJ concluded that the opinion was only entitled to "some evidentiary weight" [*Id.*].

Plaintiff contends that the ALJ's decision does not clearly explain which parts of the opinion were rejected and why they were rejected [Doc. 14 p. 15; Doc. 18 p. 3]. In response, the Commissioner states that a simple comparison between the opinion and plaintiff's RFC demonstrates which limitations were accepted and rejected [Doc. 17 p. 8].

21

The Commissioner further explains that Dr. Blaine's manipulative limitations and the suggestion that plaintiff could only sit for one hour at a time was rejected [*Id.* at 9]. Plaintiff argues, however, that the reader is left with no understanding as to why these limitations were rejected [Doc. 15 p. 16]. Both parties cite to medical records that purportedly support their respective positions on plaintiff's manipulative abilities [Doc. 15 p. 16; Doc. 17 pp. 9–10].

The Court finds that the ALJ erred in his treatment of Dr. Blaine's second opinion as well. While a side-by-side comparison of plaintiff's RFC and Dr. Blaine's opinion may make clear which limitations were accepted and which were rejected, what is not clear is why the ALJ determined that "certain aspects of Dr. Blaine's opinion are an overestimate of the claimant's limitations" and what that conclusion was based upon [Tr. 34].

The Sixth Circuit has provided that "the ALJ's decision still must say enough 'to allow the appellate court to trace the path of his reasoning.'" *Stacey v. Comm'r of Soc. Sec.*, 451 F. App'x 517, 519 (6th Cir. 2011) (quoting *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995)). Here, the Court is unable to determine why certain limitations assessed by Dr. Blaine are an overestimate of plaintiff's abilities, particularly where it is not entirely clear to begin with which limitations were accepted and which were rejected. As evidenced by the parties' arguments, for example, the record contains conflicting evidence regarding plaintiff's manipulative abilities. Therefore, without further explanation from the ALJ, the Court is unable to trace the ALJ's path of reasoning. *See*

SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996) ("Adjudicators must weigh medical source statements under the rules set out in 20 CFR 404.1527 and 416.927, providing appropriate explanations for accepting or rejecting such opinions."); *Stacey*, 451 F. App'x at 519.

Accordingly, the Court will order that the ALJ: (1) reconsider Dr. Blaine's 2009 opinion and specifically explain whether plaintiff is limited to frequent breaks and changes in position, and (2) reconsider Dr. Blaine's 2011 opinion and provide a reasoned explanation for the weight assigned to the opinion.

### C.     Credibility Determination

Finally, plaintiff maintains that the ALJ's credibility finding is not supported by substantial evidence.  Because the Court has recommended that this case be remanded to the ALJ for reevaluation of Dr. Barry's and Ms. England's opinions, the Court finds that this issue is not yet ripe for review.  Reconsidering these opinions will likely necessitate a reevaluation of plaintiff's credibility.  For example, should any of the opinions garner controlling or great weight, that opinion may in turn affect the credibility of plaintiff's subjective allegations.  Moreover, reconsideration of Dr. Blaine's opinions may likewise affect the credibility of plaintiff's statements throughout the record.

### VI.     Conclusion

Based upon the foregoing, the Court will hereby **ORDER** that plaintiff's Motion for Judgment on the Pleadings [Doc. 14] be **GRANTED in part and DENIED in part**,

and the Commissioner's Motion for Summary Judgment [Doc. 16] be **DENIED**. This case will be **REMANDED** for further consideration as follows:

1.  The ALJ shall reconsider Dr. Barry's and Ms. England's May 3, 2010, Physical Capacities Evaluation and Medical Assessment of Ability to Do Work-Related Activities (Mental), as well as their October 28, 2009 letter. The ALJ shall assign each opinion a specific weight and to the extent that an opinion is not assigning controlling weight, the ALJ must provide good reason, supported by the record, for the weight assigned; and

2.  The ALJ shall reconsider Dr. Blaine's January 5, 2009, opinion and specifically explain whether plaintiff is limited to frequent breaks and changes in position and reconsider Dr. Blaine's September 6, 2011, opinion and provide a reasoned explanation for the weight assigned to the opinion.

ORDER ACCORDINGLY.


s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE